IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TERESA RANDOLPH,           ) | |
| )                          | |
| Plaintiff,                 ) | |
| )                          | |
| v.                         ) | Case No. 2:22-cv-583-CWB |
| )                          | |
| KILOLO KIJAKAZI,           ) | |
| Acting Commissioner of     ) | |
| Social Security,           ) | |
| )                          | |
| Defendant.                 ) | |

**MEMORANDUM OPINION AND ORDER**

I.   **Introduction and Administrative Proceedings**

Teresa Randolph ("Plaintiff") filed an application for Disability Insurance Benefits under Title II of the Social Security Act on September 16, 2020—alleging disability onset as of April 1, 2020 due to type 2 diabetes, hypertension, and depression/anxiety. (Tr. 10, 92-93, 103, 105).[1] The claim was denied at the initial level on January 6, 2021 and again after reconsideration on April 6, 2021. (Tr. 10, 101, 108, 111, 130). Plaintiff then requested *de novo* review by an administrative law judge ("ALJ"). (Tr. 10, 134, 150). The ALJ subsequently heard the case on September 13, 2021, at which time testimony was given by Plaintiff (Tr. 10, 51, 63-76, 85, 88-90) and by a vocational expert (Tr. 10, 76-88). The ALJ took the matter under advisement and issued a written decision on December 15, 2021 that found Plaintiff not disabled. (Tr. 10-26).

The ALJ's written decision contained the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act on December 31, 2024.

---

[1] References to pages in the transcript are denoted by the abbreviation "Tr."

2. The claimant has not engaged in substantial gainful activity since April 1, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: diabetes mellitus and essential hypertension (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can lift and carry twenty pounds occasionally and twenty pounds frequently. She can stand and or walk with normal breaks for a total of six hours in an eight-hour workday. The claimant can sit with normal breaks for a total of six hours in an eight-hour workday. She can push and pull as much as she can lift and carry. The claimant can frequently climb ramps and stairs, and can never climb ladders, ropes, and scaffolds. She can frequently stoop, kneel, crouch and crawl, and can frequently handle finger. The claimant can occasionally be exposed to extreme cold and extreme heat. She can never work at unprotected heights.

6. The claimant is capable of performing past relevant work as a correctional officer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2020, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 12, 17, 25, 26). On August 16, 2022, the Appeals Council denied Plaintiff's request for review (Tr. 1-5), thereby rendering the ALJ's decision the final decision of the Commissioner. *See, e.g., Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Plaintiff now asks the court to reverse the final decision and to award benefits or, alternatively, to remand the case for a new hearing and further consideration. (Doc. 1 at pp. 1-2; Doc. 14 at pp. 1, 11-13). As contemplated by 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the exercise of full jurisdiction by a United States Magistrate Judge (Docs. 10 & 11), and the undersigned finds that the case is ripe for review

pursuant to 42 U.S.C. § 405(g). Specifically, the court construes Plaintiff's supporting brief (Doc. 14) as a motion for summary judgment and the Commissioner's opposition brief (Doc. 15) as a competing motion for summary judgment. Upon consideration of the parties' submissions, the relevant law, and the record as a whole, the court concludes that Plaintiff's motion for summary judgment is due to be denied, that the Commissioner's motion for summary judgment is due to be granted, and that the final decision is due to be affirmed.

## II.     Standard of Review and Regulatory Framework

The court's review of the Commissioner's decision is a limited one. Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.") (citations omitted). The court thus may reverse the ALJ's decision only if convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). Reversal is not warranted simply because the court itself would have reached a contrary result. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Despite the deferential nature of its review, however, the court must look beyond those parts of the record that support the decision, must view the record in its entirety, and must take account of evidence that detracts from the evidence relied on in the decision. *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *see also Walker v. Bowen*,

826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]  To make such a determination, the ALJ employs a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520 & 416.920.

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment severe?
>
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

[3] Although *McDaniel* is a Supplemental Security Income case under Title XVI, the same sequence applies to claims for Disability Insurance Benefits brought under Title II.  Cases arising under Title XVI therefore are appropriately cited as authority in Title II cases, and vice versa.  *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *see also Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the burden of proof from step one through step four. *Id*. At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do so, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239-40. The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual, and combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*. at 1240.

**III.   Issue on Appeal**

Plaintiff raises one issue on appeal, arguing that the ALJ mischaracterized the VE's testimony in concluding that she could perform her past relevant work. (Doc. 14 at p. 6). The Commissioner conversely contends that substantial evidence supported the ALJ's finding that Plaintiff could perform her past relevant work as she actually performed it. (Doc. 15 at p. 4).

**IV.     Discussion**

Plaintiff asserts that the ALJ erred in relying upon the VE's identification of a certain code in the Dictionary of Occupational Titles ("DOT") to describe her past relevant work as a correctional officer because the VE later testified that <u>another</u> DOT code better described Plaintiff's past work given that Plaintiff did not supervise any employees.  (Doc. 14 at pp. 6-7). In response, the Commissioner asserts that application of the DOT is irrelevant here because Plaintiff failed to show that she could not perform past relevant work as she <u>actually</u> performed it, *i.e.*, the DOT relates only to how work is <u>generally</u> performed in the national economy.  (*Id*. at pp. 1, 3 n.2, 6).

At step four of the sequential evaluation process, the ALJ will consider a claimant's RFC and the claimant's past relevant work to determine whether the claimant "can still engage in the kind of gainful employment that [the claimant] has undertaken in the past." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018); 20 C.F.R. § 404.1520(a)(4)(iv).  "At step four, the claimant carries a heavy burden of showing that his impairment prevents him from performing his past relevant work." *Id*.  "The claimant bears the burden of showing that he cannot perform his past work as he actually performed it and as it is generally performed in the national economy." *Simpson v. Com'r of Soc. Sec.*, 423 F. App'x 882, 884 (11th Cir. 2011) (citing SSR 82-61, 1982 WL 31387 at *1-2 (S.S.A. Jan. 1, 1982) and *Jackson v. Bowen*, 801 F.2d 1291, 1293-94 (11th Cir. 1986)); *Waldrop v. Comm'r of Soc. Sec.*, 379 F. App'x 948, 953 (11th Cir. 2010) ("[I]t is the claimant's burden to demonstrate not only that she can no longer perform her past relevant work as she actually performed it, but also that she can no longer perform this work as it is performed in the general economy."); *Cantu v. Comm'r of Soc. Sec.*, No. 2:19-CV-832, 2021 WL 960686 at *4 (M.D. Fla. Mar. 15, 2021).  Stated differently, "[i]f the ALJ finds that the

claimant cannot perform the functional demands and duties of her past job as she actually performed it, he will consider whether the claimant can perform the functional demands and duties of the occupation as generally required by employers throughout the national economy." *Scharber v. Comm'r of Soc. Sec.*, 411 F. App'x 281, 282 (11th Cir. 2011).

In considering whether a claimant can return to past relevant work, "[t]he ALJ must take all the duties of a claimant's past work into consideration and evaluate whether the claimant can still perform them in spite of the severe impairment or combination of impairments." *McCormick v. Soc. Sec. Admin., Com'r*, 619 F. App'x 855, 858 (11th Cir. 2015); *Lucas v. Sullivan*, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990). In support of a claim, "[t]he claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work." SSR 82-62, 1982 WL 31386 at *3 (S.S.A. Jan. 1, 1982); *Cantu*, 2021 WL 960686 at *4. "The ALJ may rely on information contained in the Dictionary of Occupational Titles (DOT) to determine whether a claimant can perform his past relevant work." *Rivera-Cruzada v. Comm'r of Soc. Sec.*, 741 F. App'x 737, 739 (11th Cir. 2018). As Social Security Ruling 00-4p explains, the SSA "rel[ies] primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy. [The SSA] use[s] these publications at steps 4 and 5 of the sequential evaluation process." SSR 00-4P, 2000 WL 1898704 at *2 (S.S.A. Dec. 4, 2000). "Similarly, [20 C.F.R. § 404.1566(d)] explicitly names the DOT as one of the main sources of jobs data the SSA relies on, and provides that ALJs 'will take administrative notice of reliable job information available' in the DOT." *Washington*, 906 F.3d at 1364-65 (citations omitted).

"The ALJ may also rely on the testimony of a VE, 'an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments.'" *Rivera-Cruzada*, 741 F. App'x at 739 (citation omitted); SSR 00-4P, 2000 WL 1898704 at *2; 20 C.F.R. § 404.1560(b)(2) ("We will ask you for information about work you have done in the past. We may also ask other people who know about your work. ... We may use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles' and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity."). However, "[g]enerally, vocational expert testimony is not necessary to determine whether a claimant can perform his past relevant work." *Hernandez v. Comm'r of Soc. Sec.*, 433 F. App'x 821, 823 (11th Cir. 2011) (citing *Lucas*, 918 F.2d at 1573 n.2); *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 918 (11th Cir. 2019) ("The testimony of a vocational expert is only required to determine whether the claimant's RFC permits her to do other work after she has met her initial burden of showing that she cannot do past work.")).

Here, the ALJ found that Plaintiff was capable of performing past relevant work as a correctional officer and that such work did not require the performance of work-related activities precluded by her RFC:

> At hearing, the impartial vocational expert Melissa Williamson was asked to summarize the claimant's past jobs. She testified that the claimant had worked in the past as a correctional officer (DOT # 188.167-026) that she graded as medium and skilled with a specific vocational preparation (SVP) of 7. Ms. Williams testified that the job was industry specific and within the confines of her residual functional capacity, the claimant could perform her past jobs as generally and actually preformed.
> ***

> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles or any inconsistencies were addressed relying on vocational expert's training and work experience.
>
> Accordingly, in comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed.

(Tr. 25). Plaintiff's RFC limited her to performing light work[4] and included that she could lift and carry twenty pounds occasionally and twenty pounds frequently, that she could stand and/or walk with normal breaks for a total of six hours in an eight-hour workday, that she could sit with normal breaks for a total of six hours in an eight-hour workday, that she could push and pull as much as she could lift and carry, that she could frequently climb ramps and stairs, and could never climb ladders, ropes, and scaffolds, that she could frequently stoop, kneel, crouch and crawl, and could frequently handle finger, that she could occasionally be exposed to extreme cold and extreme heat, and that she could never work at unprotected heights. (Tr. 17). Plaintiff does not challenge the RFC determination.

The VE testified that she reviewed Plaintiff's work history and listened to Plaintiff's testimony regarding her vocational background. (Tr. 77-78). In the work history report, Plaintiff listed her past relevant work as a correctional officer and stated that the heaviest weight she lifted was 10 pounds, that she walked 2-3 hours per day, that she stood 4 hours per day, and that she sat 1-2 hours per day. (Tr. 256-58). Based upon Plaintiff's work history report, the VE considered Plaintiff's job description as "light or above." (Tr. 84). Initially identifying Plaintiff's past work as a correctional officer with the DOT Code 188.167-026, the ALJ posed the following

---

[4] "Light work" "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

hypothetical question to the VE:

> Q … [F]or the following hypothetical questions, please consider an individual the same age, education and work experience as Ms. Randolph.  For Hypothetical #1, I'd like for you to consider that such an individual can lift and carry 50 pounds occasionally and 25 pounds frequently, can stand and/or walk with normal breaks for a total of six hours in an eight-hour workday, sit with normal breaks for a total of six hours in an eight-hour workday.  Pushing and pulling is the same as for lifting and carrying.  Can frequently climb ramps and stairs, never climb ladders, ropes and scaffolds.  Can frequently stoop, kneel, crouch and crawl.  Occasional work exposed to extreme cold and extreme heat, and no work at unprotected heights.  Given this hypothetical, could such an individual perform any of Ms. Randolph's past work?
>
> A Yes, Your Honor.

(Tr. 79).[5]  After Plaintiff clarified that she did not supervise other correctional officers, the VE then identified Plaintiff's past work as a correctional officer with the DOT code 372.667-018. (Tr. 84-86).  Using DOT code 372.667-018, the VE further testified that "there would be no past work past the first hypothetical for medium work," that is, using DOT code 372.667-018, past relevant work would be eliminated under hypothetical questions two and three, but not one. (Tr. 86, 88).

The VE's testimony reveals that Plaintiff was capable of performing her correctional officer job as <u>actually performed</u> (Tr. 25, 83-84), and Plaintiff has not shown the relevance of a misidentified DOT code that described how the work is <u>generally performed</u>.  *See* SSR 00-4P, 2000 WL 1898704 at *3 ("The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings.").  Nor has Plaintiff asserted that the ALJ erred in finding that she could perform past work as she actually performed it.  Plaintiff's challenge to the final decision therefore fails.  *See Scharber*, 411 F. App'x at 283 ("Because substantial evidence supports the ALJ's finding that

---

[5] The ALJ posed three hypothetical questions to the VE with varying limitations.  (Tr. 79-81).

Scharber actually could perform her past relevant work, we will not consider whether the ALJ properly classified Scharber as a 'teacher's aide,' instead of as a 'child monitor,' when determining if Scharber could perform the job as generally performed in the national economy."); *Hernandez v. Astrue*, 277 F. App'x 617, 625 (7th Cir. 2008) ("When a VE testifies that a claimant can still perform her past work as it was actually performed, the DOT becomes irrelevant."); *Sheila R. v. Kijakazi*, No. 1:20-CV-04180, 2022 WL 17078098 at *6 (N.D. Ga. Mar. 3, 2022) (noting that the plaintiff failed to show any relevance of a misidentified DOT number describing how the work was generally performed, when the VE testified that the plaintiff could perform past relevant work as actually performed); *Dukes v. Saul*, No. 8:18-cv-2553, 2020 WL 755393 at *4 (M.D. Fla. Feb. 14, 2020) (determining that the ALJ had no duty to resolve at Step Four a conflict between the DOT and the VE's testimony because the VE testified that the claimant could perform her PRW as actually performed); *Bratcher v. Kijakazi*, No. 4:22-CV-206, 2023 WL 319818 at *4-5 (N.D. Fla. Jan. 3, 2023), *report and recommendation adopted*, No. 4:22CV206, 2023 WL 318461 (N.D. Fla. Jan. 19, 2023).

**V.   Conclusion**

After carefully and independently reviewing the record, and for the reasons stated above, the court concludes as follows:

- that Plaintiff's motion for summary judgment (Doc. 14) is due to be **DENIED**;
- that the Commissioner's motion for summary judgment (Doc. 15) is due to be **GRANTED**; and
- that the Commissioner's decision is due to be **AFFIRMED**.

A separate judgment will issue.

**DONE** this the 18th day of December 2023.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**